Mr. Holt. May it please the court. My name is Aaron Holt and I represent the appellant Jose Sanchez. I'm asking this court to reverse the district court's denial of Mr. Sanchez's motion to suppress in this case and vacate his conviction. I submit that the court erred in failing to grant that motion to suppress for two main reasons. The first has to do with the unreasonable prolonging of a traffic stop such that it became an unlawful seizure and the second has to do with an unconstitutional search that took place. Tell me something I'm confused about. 20 minutes is mentioned and 40 minutes is mentioned and a couple of other times are mentioned. Would you quickly in a sentence or two tell us the times? That was confusing. Yes, your honor. The traffic stop was initiated approximately 20 minutes after it began the criminal history check on Mr. Sanchez came back. I think that's the first mention of 20 minutes. So the trooper discovered that Mr. Sanchez, that the tags were expired on the vehicle. The vehicle didn't belong to them and Mr. Sanchez did not have a driver's license and then it was determined that a criminal history check came back clear after 20 minutes. At that point the traffic stop was extended so that a canine sniff could be performed on the vehicle and it was 20 minutes after that initial 20-minute period when the contraband was actually found. How long did the dog sniff take? The dog sniff only took a couple of minutes. But nobody's relying on that? The government has conceded that, as the district court put it, because the canine sniff, the dog sniff did not provide the troopers with probable cause to justify the search. And that's one of the main issues that I think is important here because setting aside the fact that, well first of all, we do argue that there was not reasonable suspicion to even delay the stop to perform the sniff. But after the sniff was performed, if it didn't provide probable cause, then that means any reasonable suspicion that existed was dispelled at that point and they should have finished the business of the traffic stop, issued a citation to Mr. Sanchez, and concluded the stop. That's not what happened. Instead, an unconstitutional search of the entire vehicle was performed. They searched the cab of the vehicle, they got inside, they were looking everywhere, they got up in the truck bed, and they eventually looked under the vehicle. How do we take into account this sniff that we're not to take into account? Well, Judge Kelly, what I would say is that you have to treat it as if it dispelled any reasonable suspicion. It did not provide probable cause. Therefore, the troopers should have returned to the mission of the stop, which was addressing the unlicensed driver driving a vehicle with expired tags. And when they didn't do that, the unconstitutional search also transformed the entire stop into an unconstitutional seizure. Because that additional delay, we know from the Rodriguez case, the Supreme Court case, any measurable extension of a traffic stop beyond the time that's needed to accomplish its mission is unreasonable and unconstitutional, and any fruits of that have to be suppressed. So how much time then between the initial 20 minutes, so there's 20 minutes, and then you said the dog only took a minute or two. How much into the second 20 minutes was the dog done with his or her work? I would say after the dog finished, I was looking at the video of this just the other day, I believe after the dog finished, there was approximately, I think approximately 11 and a half minutes that I counted between the time the dog was you have that initial 20 minutes, you have a few minutes that they have to wait for the dog to get there and perform the sniff. I think that's, again, I think that's about 10 minutes between the time the criminal history check comes back and the time the dog sniff is done. And you have about 11 and a half minutes from the end of that dog sniff to the finding of the suspected contraband. So are you saying that we should impute to the officer the knowledge that the sniff was improperly done so that as soon as there was a unwarranted alert, that's when he is to stop? I think that's the only objective way to do it when you look at the objective facts of it and what things actually provided. Again, the main issue that you're looking at is were these things reasonable? And you have to, and what was the behavior objectively reasonable or unreasonable? When you're looking at it from an objective standpoint like that and you have an improperly performed canine sniff that everybody later says, nah, this was no good, this didn't provide probable cause, I think that's ultimately how you have to treat it, is you have to treat it as if that did not provide probable cause and therefore the time they spent rifling through the truck, that is an unconstitutional prolonging of this seizure that started off lawful. We've conceded it started off lawful, but that prolonged it in such a way that rendered the whole, everything else after it unconstitutional. You use the magic word later. At the time they thought the sniff was okay, huh? The police officers. Judge, I don't know what they subjectively thought apparently. Well, I mean by the actions and by, we have a video, right? Sure, yeah. Yeah, they thought it was okay. They thought the dog saw drugs everywhere, right? Didn't the dog alert several different places in the vehicle? Well, that's a matter of we challenged it, we challenged whether there was any alert or indication or whatever. So we challenged that initially, then none of it ended up mattering and we just moved on to the to the other issues. Well, let me ask you this. It seems to me that under the totality of the circumstances here, you got to stop, you got expired tags, you got a driver with no license, they don't own the vehicle, he says he's going to Little Rock to paint, but he has no painting equipment with him. They're going to stay at a hotel, but they don't know the name of the hotel. That sounds pretty suspicious. So let's say, I don't know, maybe you won't agree, but to me that sounds like he's got reasonable suspicion to detain him for some period of time to do some kind of investigation to figure out what's going on. If you accept that, how long can he detain him to try to figure out what's going on with this very suspicious activity? Well, again, Judge Mollat, first I would say we do disagree that there was reasonable suspicion. We contend that there were explanations provided, especially in context of that. Those are added into the totality of the circumstances such that there really wasn't much to go on in prolonging it. And again, you do have to look at reasonableness here and it is complicated by the fact that they ended up performing this search, that they ended up, you know, not relying on after the fact. But again, the test is whether it's, whether the mission of the stop is, well, okay. Again, yes, when you have reasonable suspicion, usually these cases involve calling a dog and performing a dog sniff. That's what most reasonable suspicion cases seem to turn on. You think there's drug activity, you call the dog, you see whether or not there is. The end of that dog sniff, I would say, that's the cutoff that you're looking at. And then what is the trooper supposed to do at that point? I mean, can a trooper release a car with expired tags, a driver with no driver's license that the driver doesn't own, can they send that person on their way? Or do you have to say, we're going to impound the car because you don't have, your tags are expired, you don't have a license, now we've got to figure out, and there's two kids in the car, that complicates it. Sure. Well, in this case, Your Honor, if you look at what Trooper Niedert said in the suppression hearing, he said he hadn't made the decision as to what he was going to do. He said that sometimes in that kind of situation, he would tow the car and impound it. Sometimes he wouldn't. And he said he hadn't made that, he was quite candid, that he hadn't made the decision yet. He didn't know what he was going to do. He said he wasn't going to let them leave and drive away. And that he was, I believe that what he said was that he was leaning toward citing the driver. He was sure about that. He was at least, he was giving him a ticket, but he did not make the decision as to whether he was going to impound it or not. Well, but doesn't that then go into the issue of prolonging the search? Because if you're the trooper there saying, okay, I got a car with an unlicensed driver, expired tags, they don't own it. I know I'm either going to do one of two things. I'm going to either impound it, or I'm going to tell them they have to come and get a driver with a license who can drive it. Either one, I'm going to take some time. Does that work into the equation of whether another 10 or 15 minutes is too long? Well, Judge, I would just, I would point to something in the Rodriguez case that says that the reasonableness of a traffic stop depends on what the officers in fact do. And what they in fact did in this case was perform an unconstitutional search of the truck. So regardless of what they did do, I just, I don't know to what degree you can speculate about what exactly would have happened or how exactly the stop would have ended other than it wasn't proven that he would have impounded it. There was some argument made as to inevitable discovery, whether that was an issue. But the government didn't ever put on any evidence about what policies would have been, what policy was in effect and what kind of search would have been done. So you can't conclude even if it was unfound eventually that, you know, that's, that's one of the things the case law is clear that when you impound a vehicle, you don't just get free range to search and look for criminal activity. It's an issue, it's a safety issue, whether there's, you know, safety and property protection issue. There have to be policies, those have to be followed. There was no evidence of what policies these officers would have followed or anybody would have followed to, to, to determine whether what was in the vehicle, what, what an inventory would have been done of. So there's no way to tell, you know, even if they've been impounded, there's no way to tell that, that this is what would have happened, that they would have found the, the contraband under, under the vehicle eventually. And again, I would just, I would just point out that this is exactly the kind of thing that the exclusionary rule is designed to, to deter. Conduct in which law enforcement comes and performs an improper canine sniff that's not according to policy. So they, they, they, they do that unreasonably. Then they perform an unreasonable unconstitutional search on the basis of that, that improper dog sniff. Troopers, state troopers should be encouraged, should be encouraged and, well, should be encouraged to follow the procedure and, and do things right. And, and in this case that, that clearly didn't happen. It clearly was application of the exclusionary rule in this case will deter that kind of conduct in the future. And let's see, I'm into my rebuttal time. So with the court's permission, I'll reserve the remaining time. So done. Ms. Driver. You can adjust it on your right if you, if you want to. May it please the court. My name is Amy Driver, Assistant United States Attorney appearing on behalf of the government for the Western District of Arkansas. And I should also note that I was the attorney for the government at the district court level as well during the suppression hearing. Your Honors, the government asked this court to inform the lower court's decision in denying the motion to suppress. I first wanted to address, since you brought up the 34 minutes and some change, it's 19 minutes into the stop whenever they're actually able to obtain his accurate record return. And then 16. Did he give a false name initially? He gave, he gave the name Jimmy, which we contend is a false name. The appellant now states that he, that is a nickname, an Americanized nickname for his middle name Jaime. But I'd point out that Supernitr didn't have any documentation as to his first, middle or either one of his last names. And it's inconsistent with the fact that Fuentes, his girlfriend who was present, was calling him Jose. So that 16 minutes after they get the record return is whenever the drugs are found at 35 minutes. The dog sniff takes one and a half minutes. The officers thought at the time the dog sniff was fine, right? Yes, your This is so messed up. Tell me why there isn't some kind of taint from the bad drug sniff. Okay, your honor, the government conceded this before the suppression hearing. But in this particular situation, it was a very technical situation where our, where he laid the tailgate down and our expert said he shouldn't have laid the tailgate down. That was in violation or not in accordance with the state police procedure on a drug sniff. The officer on the scene or Trooper Niedert has no idea about it. And Corporal Bowman at least appeared to not understand that that was a, whether or not that was something he should have known in the first place. But regardless, it was something rather technical. We could have ordered, offered a good faith as an explanation. But nonetheless, it was a technical, uh, infraction of what their policy is. We felt it was best in the most honest thing to do was concede that it couldn't be based upon probable cause. But I had already argued, I believe in my, uh, pre suppression hearing brief that this was the exterior of the vehicle and they didn't need probable cause to make a visual examination of the undercarriage. Now, as to, uh, the detention in arguing that the detention was unlawful. Appellate cites the case of United States versus Rodriguez for the proposition that once Trooper Niedert received the appellant's record, he should have been free to leave. But Rodriguez instead demonstrates why the investigation related to the stop could not be completed at that time. In Rodriguez, the officer was able to get the driver's license, the registration and insurance from Rodriguez. He was able to get the passenger's driver's license. He was made able to get their there were no red flags raised. Unlike that situation, Trooper Niedert is inundated with contradictions, suspicions and a lack of information. Neither one of these people has a driver's license. The appellant gives the name is Jimmy. They can't determine the owner of the vehicle. Fuentes states that she doesn't know. Then she states that his name is Miguel, but that may not be his real name. And the insurance card indicates a third party altogether. So we can't make heads of tail of it. Their explanation for why they're driving five hours from Farmers Branch, Texas to Little Rock, Arkansas for two to three day paint job with their entire family also doesn't add up. They don't have any equipment or supplies. Appellant now states, well, we've we've covered the fact that he gives the name of Jimmy again. I would just point out that he doesn't. The trooper doesn't have any kind of documentation as to what his name is. And as the court found in Rodriguez, the officer is obligated to ensure the safety and responsibility of the vehicle. As you pointed out, he can't continue to allow these unlicensed drivers to continue on. And that was his duty and an obligation, given the suspicious circumstances, to investigate further. So that investigation further, they called the dog. What about the argument that even if there was reasonable suspicion, bring the dog in, run the sniff, that once that was over, the stop should have been over? Once they ran the dog? Yes. Well, that doesn't... The procedural irregularity, I believe this court held in Yang, that a procedural irregularity does not minimize reasonable suspicion. He still had reasonable suspicion and an obligation to continue to investigate. At that point, you still have all the suspicious circumstances and he hasn't concluded the stop. Well, let me follow up on that a little bit. If the sniff is not... You're not relying on any kind of alert from the dog, how much longer could the officer continue to sniff, presuming that that didn't provide probable cause for a search? How much longer could this go? Well, I know in Olivera v. Mendez, there is no per se time limit. It's a fact-intensive inquiry. But I would say that once they got to the point where they had decided to impound the car, or if they had actually obtained the owner's name and contacted the owner, and had cited or arrested the appellate for driving without a license, it should have been concluded at that point. Now, this court has recognized similar... Does that answer the question? I wanted to... All right. This court has recognized a similar situation that supports reasonable suspicion in Murillo-Salgado, where there was an inconsistency in the name. Arredondo, the driver, had a name and a license, which didn't match up with the name on the rental agreement. Also, the car was rented for five days, which the trooper thought was insufficient to go to North Carolina, install the wiring on a 15,000 square foot house. And where also the trooper noted that he had an insufficient amount of electrical wiring for that type of job. Those facts are substantially similar to this case, where Trooper Niedert testified that he's trained, that whenever they give an explanation for what the purpose of their trip is, he looks to see if they have equipment, or if they say they're just taking a trip to visit somebody. Do they have luggage that matches that up? I'm going to bring you back on track just a bit. What you're arguing, is that still just arguing that there was reasonable suspicion to continue to look into this? But what else did the officer... You're identifying features of his circumstance that seem suspicious, but there wasn't any follow-up to track down, for example, Miguel, or the kinds of things that you're saying were suspicious. How long could this go, in other words, with the kind of suspicious conduct that you've described? How long would a reasonable officer be able to hold him on the side of the road? Well, I think that that's a fact and sense of inquiry. But I will say, I don't think that he could have continued on. He couldn't have continued asking the same questions over and over. But you'll see that after the point that he gets the record return, he's still trying to ask questions about the owner of the vehicle, because he's recognized that he's getting three different stories here, or two different stories and a different name on the insurance card. So I don't think he can continue forever. But if you look at part of the testimony, I believe that Trooper Niedert states that he oftentimes tries to contact the owner of the vehicle. And his conduct throughout this is he's accommodating, he's polite. Trooper Niedert is a, he's just respectful. And I think that he was probably tries to do people a favor whenever they're in that situation and contact the owner to pick up their vehicle. Now, I should probably address the undercarriage at this point. Because their drugs were found in the spare tire in the undercarriage. Appellate argues that the cases which have previously held that there is no reasonable expectation of privacy in the undercarriage are cases that were along the U.S.-Mexico border. Now, aside from the Rascal Nortiz and Garcia, the Fifth Circuit, the Tenth Circuit also has recognized no reasonable expectation of privacy in U.S. v. Lyons and U.S. v. Kerr. Also, the U.S. District Court in Minnesota in the U.S. v. Shannon case. Appellant also cites the case of State v. White, which is an Ohio Court of Appeals case. I would just point out, obviously, that doesn't, this court is not bound by that decision. But that is a GPS case. And the Supreme Court has thoroughly addressed that. Well, I shouldn't say thoroughly because it does leave some questions. But they stated in the Jones case that the GPS cases do not rest upon the area of the vehicle that was accessed. And in that case, it was the undercarriage. But rather upon the attachment of the GPS device and the collection of data. Counsel, what about what they did? Are you familiar with Arizona v. Hicks? It's cited in several of these ones. Well, it is a 1986 Supreme Court case. And it's in Rescon Ortiz and several of the cases. And the Supreme Court, Justice Scalia says, a truly cursory inspection, just looking at what's exposed of you without disturbing it is not a search. But he says if you turn, this is, I think, a stereo case, to see the serial number, or you do anything to disturb it, then it is a search. And you've got to have probable cause. Do they have probable cause when it's a black something they see, right, by the spare tire? It's a black, like, plastic something? Black plastic bag. Right. That's right. Does it become a search, then, and they don't have probable cause at that point? So they do not. They had to have probable cause at that point. And as the district court held, the moment that they see the black bags, which is a foreign material, they have probable cause to search. And they did. They took that to a garage. Back up with me a second. Is that probable cause based on the drug doll? No, that's probable cause based upon the identification of something foreign in the spare tire. As Trooper Neter did. But it can be, you know, just tools or, you know, anything. Well, if you look at the testimony, Trooper Neter testified that in his nine years of experience, and he does criminal interdiction, he teaches criminal interdiction as well, he had never come across something non- Ordinary law-abiding people don't hide legitimate items inside the spare tire. That's why the district court found that at that point, they had probable cause. Now, I should mention that the appellant makes a good deal of hay about the fact that he claims that Corporal Bowman must have punctured it or done something with them to determine that it was a controlled substance. And I believe he does say, well, it's because of the meth right here. Well, in our jurisdiction, in the state of Arkansas, meth is the predominant drug that is found. He obviously couldn't tell what controlled substance it was. He just knew that it was some type of Corporal Bowman manipulated it is inconsistent with the facts. Trooper Neter testified that Corporal Bowman was on his back for a matter of seconds, looks up with it. He's got a flashlight. Then Trooper Neter gets under there and sees the same thing. He doesn't see ripped open bags. He doesn't see drugs, you know, falling through. Does the video look like he's got two objects or one? I couldn't tell from your brief. You know, Your Honor, I think at the time of the hearing, there wasn't much made about that, so I didn't review it for that. But in the last few days and going back, I think he does have two objects. Okay. Thank you. So I think that he does have two objects, but it's inconsistent to say that. But I think it's inconsistent with the facts. Now, all that aside, the district court held, and I think held correctly, that at the moment that they saw the black plastic bags, they had probable cause. So if he had tried to puncture it or do something at that point, it would have been- Disturb it. The Supreme Court's word is disturb. If he had tried to disturb it, he would have been legitimately able to do so. Is there a meaningful difference between expectation of privacy and the undercarriage when you voluntarily park your car someplace? You go to the when you've been pulled over and you're not there voluntarily and you're essentially detained for the purposes of a traffic stop. Does that make a difference? I don't believe it does, but I haven't come across any case where that has been the fact pattern. It's always been involved with cases where somebody's stopped for a traffic stop or coming across the border. Because it is undisputed that the officer had to get on his back and get under the car. There's no allegation or assertion that he could see this from the outside vantage point of just walking around the car. Is that correct? That's correct. I see that my time is just about up, but if I can it makes no difference. The officer has to change his position as long as he's making an inspection from a public vantage point where he has the right to be. Thank you very much. Thank you for the argument. Back to you, Mr. Holt. Turning first to the issue of Mr. Sanchez giving his name as Jimmy. I just want to point out briefly on that again. That's something that was not even mentioned by Trooper Nieder during the course of the hearing. It's something that if you review the video, he asks Ms. Fuentes a question about that. She provides some response that is unintelligible. You can't make out what she's saying. But then he never brings that up again. He never makes any issue of that. So I don't think there's really much of an issue there. To Ms. Driver's point about the reason that the government conceded that probable cause wasn't provided by the dog sniff, I just want to point out that none of the explanations she provided actually appears in the record other than what the district court said was improper procedure was followed and it didn't provide probable cause. So that's what the record shows about that. The issue of Trooper Bowman and whether he did disturb the plastic bag once he saw it, she says that the explanation that he disturbed it is inconsistent with the facts. I say I don't understand how you can see a black paper or a black plastic bag up above the spare tire of a truck and then conclude that it's, I believe actually the word that he uses in the video is dope. He said maybe it's all this dope under here. And then he says that yeah, I think it's meth. Trooper Niedert said at the hearing that Trooper Bowman told him it was suspected meth. I don't understand how you make that leap without in some way piercing through this opaque black plastic. I think that the government's proposed interpretation of what happened is inconsistent with the facts. And I would point out that he did have some kind of a tool, some kind of an implement that can be seen, especially after he gets up out from under it. It's got some kind of a handle. It appears to be some kind of several inches of metal on the end. Well, if that provides probable causes, does it make a difference? If you see a black plastic bag, it was a tape to the tire. How did they see it? I'm having a little trouble understanding because usually they're in the tire and they're so you have to actually take the tire apart to find the bag. My understanding, your honor, is is that the way that the tire, the tire was flat up against the undercarriage and that there were holes in the in the wheel part and that they could just see up through. I don't think they could see how it was, how it was secured or if it was secured. It was basically resting above the spare tire rather than being inside it. And your honor, we would contend that that just seeing some black plastic up above the spare tire does not provide probable cause necessary to to actually disturb it in some way and conduct a search. And I see that my time has expired. Thank you both for the argument. Case number 18-1890 is submitted for decision by this court.